IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| **Lance Aizen,** | : |
| Plaintiff, | : CIV. ACT. NO. 3:18-15195 |
| vs. | : |
| **Grover Lee**, individually, and in his capacity as shareholder of AHAS Holdings, Inc., as an officer and shareholder of American Healthcare Administrative Services, Inc., and as Trustee of the Grover Lee Revocable Living Trust; **Christine V. Schaffer**, individually, and in her capacity as an officer and shareholder of AHAS Holdings, Inc., as an officer, employee and shareholder of American Healthcare Administrative Services, Inc., and as Trustee of the Christine Schaffer Revocable Living Trust; **Charles E. Lee**, individually, and in his capacity as an employee and shareholder of AHAS Holdings, Inc., as employee and shareholder of American Healthcare Administrative Services, Inc., as Trustee of the Charles E. Lee 2012 Trust No. 1, and as Trustee of the Charles E. Lee 2012 Trust No. 2; **Jacqueline C. Lee**, individually, and in her capacity as an employee and shareholder of AHAS Holdings, Inc., as an employee and shareholder of American Healthcare Administrative Services, Inc., as Trustee of the Jacqueline C. Lee 2012 Trust No. 1, as Trustee of the Jacqueline C. Lee Living Trust, and as Trustee of the Jacqueline C. Lee 2012 Trust No. 2; **AHAS Holdings, Inc.; American Healthcare Administrative Services, Inc.; Grover Lee Revocable Living Trust; Christine Schaffer Revocable Living Trust; Charles E. Lee 2012 Trust No. 1; Charles E. Lee 2012 Trust No. 2; Jacqueline C. Lee 2012 Trust No. 1; Jacqueline C. Lee Living Trust; Jacqueline C. Lee 2012 Trust No. 2** | : : : : : : : : : : : : : : : : : : : : : : **AMENDED COMPLAINT** (with Jury Demand) |
| Defendants. | : |

Plaintiff, Lance Aizen ("Plaintiff"), by way of Complaint against Defendants, Grover Lee,

individually, and in his capacity as shareholder of AHAS Holdings, Inc., as an officer and shareholder

of American Healthcare Administrative Services, Inc., and as Trustee of the Grover Lee Revocable

Living Trust; Christine V. Schaffer, individually, and in her capacity as an officer and shareholder of

AHAS Holdings, Inc., as an officer, employee and shareholder of American Healthcare

Administrative Services, Inc., and as Trustee of the Christine Schaffer Revocable Living Trust; Charles E. Lee, individually, and in his capacity as an employee and shareholder of AHAS Holdings, Inc., as employee and shareholder of American Healthcare Administrative Services, Inc., as Trustee of the Charles E. Lee 2012 Trust No. 1, and as Trustee of the Charles E. Lee 2012 Trust No. 2; Jacqueline C. Lee, individually, and in her capacity as an employee and shareholder of AHAS Holdings, Inc., as an employee and shareholder of American Healthcare Administrative Services, Inc., as Trustee of the Jacqueline C. Lee 2012 Trust No. 1, as Trustee of the Jacqueline C. Lee Living Trust, and as Trustee of the Jacqueline C. Lee 2012 Trust No. 2; Grover Lee Revocable Living Trust; Christine Schaffer Revocable Living Trust; Charles E. Lee 2012 Trust No. 1; Charles E. Lee 2012 Trust No. 2; Jacqueline C. Lee 2012 Trust No. 1; and Jacqueline C. Lee Living Trust; Jacqueline C. Lee 2012 Trust No. 2 (hereinafter collectively the "Defendant Shareholders"); Defendant, AHAS Holdings, Inc. ("AHAS Parent"); and Defendant, American Healthcare Administrative Services, Inc. ("AHAS Subsidiary") (with the Defendant Shareholders, AHAS Parent and AHAS Subsidiary hereinafter collectively referred to "Defendants")(with Plaintiff and Defendants hereinafter collectively referred to as the "Parties") says:

## THE PARTIES

1.      Plaintiff, Lance Aizen, 15 Lagoon Drive South, Beach Haven, New Jersey 08008, is a citizen of the State of New Jersey, the President/Chief Executive Officer and a shareholder of Defendant, AHAS Holdings, Inc., and an officer and shareholder of Defendant, American Healthcare Administrative Services, Inc.

2.      Defendant, Grover Lee, 200 Gateway Drive #190, Lincoln, CA 95648, is a citizen of the State of California, a shareholder of Defendant, AHAS Holdings, Inc., an officer and shareholder of Defendant, American Healthcare Administrative Services, Inc., and a Trustee of Defendant, the Grover Lee Revocable Living Trust.

2

3.     Defendant, AHAS Holdings, Inc., is a Delaware corporation, and owns one-hundred-percent (100%) of Defendant, American Healthcare Administrative Services, Inc.

4.     Defendant, American Healthcare Administrative Services, Inc., 3850 Atherton Road, Rocklin, CA 95765, is a California corporation.

5.     Defendant, the Grover Lee Revocable Living Trust, 200 Gateway Drive #190, Lincoln, CA 95648, is, upon information and belief, a trust established under the laws of the State of California.

6.     Defendant, Christine V. Schaffer, also known as Christine V. Lee, 8434 Twin Lake Drive, Boca Raton, FL 33496, is a citizen of the State of Florida, an officer and shareholder of Defendant, AHAS Holdings, Inc., an officer, employee and shareholder of Defendant, American Healthcare Administrative Services, Inc., and a Trustee of Defendant, the Christine Schaffer Revocable Living Trust.

7.     Defendant, the Christine Schaffer Revocable Living Trust, 8434 Twin Lake Drive, Boca Raton, FL 33496, is, upon information and belief, a trust established under the laws of the State of California.

8.     Defendant, Charles E. Lee, 8434 Twin Lake Drive, Boca Raton, FL 33496, is a citizen of the State of Florida, an employee and shareholder of Defendant, AHAS Holdings, Inc., an employee and shareholder of Defendant, American Healthcare Administrative Services, Inc., a Trustee of Defendant, the Charles E. Lee 2012 Trust No. 1, and a Trustee of Defendant, the Charles E. Lee 2012 Trust No. 2.

9.     Defendant, the Charles E. Lee 2012 Trust No. 1, 8434 Twin Lake Drive, Boca Raton, FL 33496, is, upon information and belief, a trust established under the laws of the State of California.

10.     Defendant, the Charles E. Lee 2012 Trust No. 2, 8434 Twin Lake Drive, Boca Raton, FL 33496, is, upon information and belief, a trust established under the laws of the State of California.

3

11.    Defendant, the Charles E. Lee Living Trust, 8434 Twin Lake Drive, Boca Raton, FL 33496, is, upon information and belief, a trust established under the laws of the State of California.

12.    Jacqueline C. Lee, 9701 Wilshere Boulevard, Beverly Hills, CA 90212, is a citizen of the State of California, an employee and shareholder of Defendant, AHAS Holdings, Inc., an employee and shareholder of Defendant, American Healthcare Administrative Services, Inc., a Trustee of Defendant, the Jacqueline C. Lee 2012 Trust No. 1, a Trustee of Defendant, the Jacqueline C. Lee Living Trust, and a Trustee of Defendant, the Jacqueline C. Lee 2012 Trust No. 2.

13.    Defendant, the Jacqueline C. Lee 2012 Trust No. 1, 9701 Wilshere Boulevard, Beverly Hills, CA 90212, is, upon information and belief, a trust established under the laws of the State of California.

14.    Defendant, the Jacqueline C. Lee 2012 Trust No. 2, 9701 Wilshere Boulevard, Beverly Hills, CA 90212, is, upon information and belief, a trust established under the laws of the State of California.

15.    Defendant, the Jacqueline C. Lee Living Trust, 9701 Wilshere Boulevard, Beverly Hills, CA 90212, is, upon information and belief, a trust established under the laws of the State of California.

## JURISDICTION AND VENUE

16.    This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because Plaintiff is a citizen of New Jersey, and, as set forth above in paragraphs 2-15, all of the Defendants are citizens of states other than New Jersey, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

17.    Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or admissions giving rise to this action occurred in the District of New Jersey, where Plaintiff resides.

4

## COUNT I
### (BREACH OF CONTRACT)

18.     Plaintiff repeats and restates all of the allegations set forth in paragraphs 1 through 17 above, as if repeated verbatim herein.

19.     On June 27, 2018, Plaintiff and entered into a legally binding and fully executed Agreement To Terminate Employment Agreement with Defendant, AHAS Subsidiary ("Termination Agreement"), which was approved by all shareholders of AHAS Parent, in connection with a third-party purchase of certain assets of AHAS subsidiary through its AHAS Parent, which said asset purchase was approved by all of the shareholders of AHAS Parent and AHAS Subsidiary, who were Plaintiff and the Defendant Shareholders.

20.     As part of that third-party asset purchase, and as inducement for Plaintiff, as a shareholder to agree to that sale transaction, and as consideration for Plaintiff to enter into the Termination Agreement, Defendants agreed to pay Plaintiff twenty-million, eight-hundred thousand dollars ($20,800,000.00)

21.     Pursuant to paragraph 2 of the Termination Agreement, Defendants agreed that, at closing on the asset purchase transaction, Plaintiff would be paid a lump sum bonus of nine-million dollars ($9,000,000), which Plaintiff received.

23.     As set forth in Section G of the Termination Agreement, AHAS Subsidiary also agreed that the remaining eleven million, eight-hundred thousand dollars ($11,800,000.00) owed to Plaintiff following closing on the third-party asset purchase transaction, was either to be paid through creation of a new company, or by providing Plaintiff with a new ownership interest in Defendant, AHAS Subsidiary, such that the $11.8 million would be paid to Plaintiff in priority shareholder distributions paid before any distributions of any kind are paid to the Defendant Shareholders and other shareholders.

24.     The Parties agree that the new company referenced in Section G of the Termination

5

Agreement cannot be created due to that new company's inability to meet its intended purpose under the Termination Agreement.

25.    Plaintiff has fully performed all of his obligations to Defendants following closing on the third-party asset transaction, including, but not limited to, his obligations under the Termination Agreement.

26.    However, after the closing on third-party transaction and execution of the Termination Agreement, the Defendants have breached the Termination Agreement with Plaintiff by, *inter alia*: (a) making false allegations of criminal conduct by Plaintiff made by Defendant, Christine Schaffer, a director, officer and shareholder of Defendants, AHAS Parent and AHAS Subsidiary, and by Defendants' alleged attorney, Christopher Rodriquez, Esq., in order to unethically and unlawfully intimidate and pressure Plaintiff into both giving up his contractually-obligated funds due him and other rights under the Termination Agreement, and accepting Defendants' multiple breaches of the Termination Agreement; (b) constructively terminating Plaintiff from his position as Chief Executive Officer/President of AHAS Parent and AHAS Subsidiary by unlawfully refusing to pay Plaintiff his $500,000 monthly payments, or any other remuneration, required under the Termination Agreement, and stripping him of all his longstanding rights, duties and responsibilities as the Chief Executive Officer/President of both AHAS Parent and AHAS Subsidiary, including, but not limited to, unlawfully making a lesser officer of the company the chief executive of the company, removing his signatory authority on company bank accounts, denying him any right to communicate with any other company employees under threats of criminal and civil complaints against him, instructing company staff to cease all communications with Plaintiff, thereby completely isolating him within the company, and coercing and threatening company staff with termination of their employment if they communicate with Plaintiff; and (c) unlawfully refusing to negotiate Plaintiff's new employment

agreement or consulting agreement with AHAS Parent and AHAS Subsidiary in good faith as required under the Termination Agreement.

27.    The Defendant Shareholders have also unlawfully taken control over all of the assets AHAS Parent and AHAS Subsidiary and have intentionally converted those assets to their personal use in order to deprive Plaintiff of his $500,000 monthly payments due under the Termination Agreement.

28.    The foregoing conduct of Defendants constitutes material breaches of the Termination Agreement.

29.    Thus, as of this date, there is currently an amount due and owing by Defendants to Plaintiff of $11.3 million dollars.

30.    Defendants' foregoing material breaches of the Termination Agreement with Plaintiff has directly and proximately caused Plaintiff damages of $11.3 million dollars to date, and continuing.

WHEREFORE, Plaintiff requests entry of judgment against Defendants, AHAS Parent, AHAS Subsidiary, and the Defendant Shareholders, both individually, and in their respective capacity as officers and shareholders of AHAS Parent and AHAS Subsidiary, jointly and severally, for damages in excess of **$11,300,000.00**, plus any additional amounts due and owing under the Termination Agreement, together with punitive damages, attorney's fees, pre-judgment interest, costs and such other relief as this Court deems appropriate.

<u>**COUNT II**</u>
**(QUANTUM MERUIT/UNJUST ENRICHMENT)**

31.    Plaintiff hereby incorporates by reference the preceding paragraphs 1-30.

32.    Plaintiff only agreed to the third-party asset purchase transaction, and the Termination Agreement executed in conjunction therewith, based on agreement by the Parties that he would receive total monetary consideration of $20.8 million dollars.

33.    Plaintiff reasonably relied on the representations and acknowledgement of the

7

Defendants that he would be paid $20.8 million for agreeing to the third-party asset transaction and for entering into the Termination Agreement.

34.    Defendants have accepted the benefits of the third-party asset transaction and the Termination Agreement with Plaintiff.

35.    Defendants have been unjustly enriched by the receipt of the full asset purchase funds by wrongfully withholding the $11.3 million dollars still owed to Plaintiff, and will continue to be unjustly enriched by their receipt those funds, including, but not limited to, five-million dollars ($5,000,000.00) being held in an escrow account that will be paid to Defendants as part of that third-party asset transaction.

36.    It would be against equity and good conscience to permit Defendants to retain the benefits of the third-party asset purchase funds owed to Plaintiff without just compensation to Plaintiff, even if, *arguendo*, there is no binding agreement between Plaintiff and Defendants.

37.    If, *arguendo*, it is determined that there is no remedy at law for Plaintiff, it would be inequitable to allow Defendants to retain the third-party asset purchase funds that are due and owing to Plaintiff, including the $5 million in escrow, without requiring Defendants to pay Plaintiff the full $20.8 consideration that Defendants agreed to pay Plaintiff from that transaction.

WHEREFORE, Plaintiff requests entry of judgment against Defendants, AHAS Parent, AHAS Subsidiary, and the Defendant Shareholders, both individually, and in their respective capacity as officers and shareholders of AHAS Parent and AHAS Subsidiary, jointly and severally, for damages in excess of **$11,300,000.00**, plus any additional amounts due and owing under the Termination Agreement, together with punitive damages, attorney's fees, pre-judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT III
## (PROMISSORY ESTOPPEL)

38.    Plaintiff hereby incorporates by reference the preceding paragraphs 1-37.

8

39.     In the alternative to recovery under breach of contract, Plaintiff is entitled to recovery under the doctrine of promissory estoppel.

40.     At all times material hereto, Defendants promised Plaintiff that he would be paid $20.8 million dollars as part of the third-party asset purchase transaction.

41.     Defendants made these promises to Plaintiff with the reasonable expectation of inducing action, and detrimental reliance, on the part of Plaintiff.

42.     Plaintiff has fully complied with all of his closing and post-closing obligations relating to, or arising from, the third-party asset purchase transaction.

43.     There is now the amount **$11,300,000.00** due and owing from Defendants to Plaintiff in connection with the third-party asset purchase transaction and the Termination Agreement.

44.     Defendants have materially breached its promises to pay Plaintiff the full $20.8 million consideration owed to him as part of the third-party asset purchase transaction.

45.     The foregoing material breach has directly and proximately caused Plaintiff damages of approximately **$11,300,000.00**.

46.     The Court can only avoid injustice by finding that Defendants' promises to Plaintiff are binding.

WHEREFORE, Plaintiff requests entry of judgment against Defendants, AHAS Parent, AHAS Subsidiary, and the Defendant Shareholders, both individually and in their respective capacity as officers and shareholders of AHAS Parent and AHAS Subsidiary, jointly and severally, for damages in excess of **$11,300,000.00**, plus any additional amounts due and owing under the Termination Agreement, together with punitive damages, attorney's fees, pre-judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT IV
### (INJUNCTIVE RELIEF-SPECIFIC PERFORMANCE)

47.     Plaintiff hereby incorporates by reference the preceding paragraphs 1-46.

9

48.    Given Defendants' breach of their agreements and promises to pay Plaintiff the full $20.8 million dollars owed to him as part of the third-party asset purchase transaction, Plaintiff, both individually, and as the President/Chief Executive Officer and a shareholder of Defendant, AHAS Parent, and as an officer and shareholder of Defendant, AHAS Subsidiary, reasonably believes that the Defendant Shareholders will wrongfully convert revenue, bank and escrow accounts, and assets of AHAS Parent and AHAS Subsidiary, including, but not limited to, funds from the third-party asset purchase transaction, including the $5 million of transaction funds being held in escrow, and remaining rebate contracts of AHAS Subsidiary, to their own control and use, and/or will dissipate such funds, in order to wrongfully deprive Plaintiff of the remaining $11.3 million dollars still owed to him as part of the third-party asset purchase transaction and the Termination Agreement.

49.    Any such wrongful conversion and/or dissipation of the remaining assets, bank and escrow accounts, and revenue of AHAS Parent and/or AHAS Subsidiary prior to Plaintiff being fully paid the remaining $11.3 million dollars owed to him through priority shareholder distributions paid before any distributions of any kind are paid to the Defendant Shareholders and other shareholders will cause irreparable harm to Plaintiff, both individually, and in his capacity as an officer and minority shareholder in AHAS Parent and/or AHAS Subsidiary, since Defendants' unlawful conduct and dissipation of company asserts is financially damaging those companies, diluting the value of his shares in AHAS Parent and/or AHAS Subsidiary, and intentionally prejudicing Plaintiff's ability to ever collect the remaining $11.3 million dollars still owed to him will be significantly, if not completely, and permanently prejudiced.

50.    Therefore, Plaintiff demands that Defendants be compelled to specifically perform pursuant to their agreements and promises to pay Plaintiff the remaining $11.3 million dollars still owed to him through priority shareholder distributions paid before any distributions of any kind are paid to the Defendant Shareholders and other shareholders, and seeks injunctive relief preventing and

enjoining Defendants, including, but not limited to, the Defendant Shareholders, from converting any of the remaining assets, bank and escrow accounts, and revenue of AHAS Parent and/or AHAS Subsidiary until such time as Plaintiff is fully paid the remaining $11.3 million dollars still owed to him by Defendants through either a lump sum and/or through priority distributions from any and all profits from AHAS Parent and/or AHAS Subsidiary paid to Plaintiff before any distributions of any kind are paid to the Defendant Shareholders and other shareholders.

WHEREFORE, with cause having been shown, Plaintiffs demand judgment against Defendants, jointly and severally, for the following relief: (1) specific performance of the Termination Agreement; (2) injunctive relief preventing Defendant Shareholders from dissipating and converting assets of Defendants, AHAS Parent and AHAS Subsidiary; (3) compensatory, exemplary and consequential damages in the amount of any and all funds of Defendants, AHAS Parent and AHAS Subsidiary already removed by the Defendant Shareholders since Termination Agreement; (4) punitive damages; (7) treble damages; (8) attorney's fees and costs; and (9) such other relief the court may deem equitable and just.

### COUNT V
(CEPA/Retaliation)

51.     Plaintiff hereby incorporates by reference the preceding paragraphs 1-50.

52.     The New Jersey Conscientious Employee Protection Act ("CEPA"), *N.J.S.A.* 34:19-1, *et seq.*, was enacted, *inter alia*, to protect and encourage employees, such as Plaintiff, to notify their employer of unlawful conduct of officers/directors/co-employees of the company, and to initial legal proceedings relating to such conduct.

53.     Under CEPA, employers, such as Defendants, AHAS Parent and AHAS Subsidiary, and officers/directors/employees, such as the Defendant Shareholders, are prohibited from taking any threatening, coercive or retaliatory action against one of their employees or co-employees because an employee: (a) discloses to an officer of the company an activity, policy or practice of the employer

11

that the employee reasonably believes is a breach of an existing contract, and/or is a violation of a law, or a rule or regulation promulgated pursuant to law; or (b) objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a contractual obligation, law, or a rule or regulation promulgated pursuant to law; or (c) initiates a legal proceeding relating to such breaching or violative conduct.

54.    Pursuant to CEPA, an employee, such as Plaintiff, can, without fear of threats, coercion and retaliation from his employers and/or co-officers/employees, object, and refuse, to participate in any activity, policy or practice that he reasonably believes is in breach of a contractual obligation of the company or which violates a law, or a rule or regulation promulgated pursuant to law, and can initiate a legal action, including against his employer and co-employees, relating thereto.

55.    In September 2018, Plaintiff successfully prevented the Defendant Shareholders from unlawfully and illegally stealing $5,000,000.00 from the bank accounts of Defendants, AHAS Parent and AHAS Subsidiary and converting it to their personal use since, *inter alia*, such conduct by the Defendant Shareholders, either individually or in collusion with other Defendant Shareholders, would have violated the United States Tax Code and statutory corporate law applying to S-Corporations, as well as the by-laws of Defendants, AHAS Parent and AHAS Subsidiary.

56.    In addition, after the closing on the third-party transaction and the Termination Agreement in September 2018, Defendants, AHAS Parent and AHAS Subsidiary, by and through the Defendant Shareholders, intentionally breached their fiduciary obligations as officers, directors and shareholders of Defendants, AHAS Parent and AHAS Subsidiary under that agreement by, *inter alia*, refusing to negotiate a new employment agreement or consulting agreement with Plaintiff in good faith as required under that agreement, and by intentionally refusing to pay Plaintiff his contractually-obligated $500,000 monthly payments owed to him under that the Termination Agreement, as set forth in Count I.

12

57.    Defendants' bad faith conduct following their undisputed knowing, intentional and voluntary execution of the Termination Agreement was part of a strategy to retaliate against Aizen in order to steal the $11.3 million dollars still owed to Aizen, and to intimidate and pressure Aizen into not seeking to collect his contractually-entitled funds.

58.    In violation of CEPA, Defendants, AHAS Parent and AHAS Subsidiary, and its officers/directors/employees the Defendant Shareholders, have engaged in a continuing and persistent pattern of retaliation, harassment, pressure and threats against Plaintiff after closing on the third-party transaction and the Termination Agreement, because, and immediately after, he initiated this lawsuit against them on October 23, 2018, in which, *inter alia*, he has accused the Defendant Shareholders of breaching the Termination Agreement in bad faith and of unlawful conversion and dissipation of the assets of AHAS Subsidiary, including:

(a)    false allegations of criminal conduct against Plaintiff made by the Defendants, including the individual Defendant Shareholders, as directors, employees, officers and shareholders of Defendants, AHAS Parent and AHAS Subsidiary, and by Defendants' counsel in this action, Christopher Rodriquez, Esq., of the law firm of *Lewis Brisbois Bisgaard and Smith* (Exhibit "A"), in order to unethically and unlawfully intimidate and pressure Plaintiff into both giving up his contractually-obligated funds due him, and other rights, under the Termination Agreement, and into accepting Defendants' multiple breaches of the Termination Agreement;

(b)    terminating Plaintiff from his position as Chief Executive Officer/President of AHAS Parent and AHAS Subsidiary by unlawfully refusing to pay Plaintiff his $500,000 monthly payments required under the Termination Agreement, and stripping him of all his longstanding rights, duties and responsibilities as the Chief Executive Officer/President of both AHAS Parent and AHAS Subsidiary, including, but not limited to, unlawfully making a

lesser officer of the company the chief executive of the company, removing his signatory authority on company bank accounts, denying him any right to communicate with any other company employees under threats of criminal and civil complaints against him, instructing company staff to cease all communications with Plaintiff, thereby completely isolating him within the company, and coercing and threatening company staff with termination of their employment if they communicate with Plaintiff (Exhibit "B");

(c)    intentionally and maliciously filing a frivolous lawsuit in a state court in California, through its same counsel in this action *after* Plaintiff had already initiated this action and after counsel had already entered an appearance in this case, in which Defendants, AHAS Parent and AHAS Subsidiary have falsely accused Plaintiff of, *inter alia*, fraud, intentional misrepresentations and breach of fiduciary duty, relating to, *inter alia*, payment of his contractually-entitled and approved $20.8 million dollar pay-out from the third-party purchase transaction, including the remaining $11.3 million still owed to him under that transaction, and payment of a $500,000 distribution toward the remaining $11.8million owed to him after the closing on the third-party transaction;

(d)    unlawfully refusing to negotiate Plaintiff's new employment agreement or consulting agreement with AHAS Parent and AHAS Subsidiary as required under the Termination Agreement, thereby constructively terminating him from all employment with Defendants, AHAS Parent and AHAS Subsidiary;

(e)    directly, intentionally and tortiously interfering, obstructing and preventing Plaintiff from performing his employment and contractual duties as CEO of Defendant AHAS Subsidiary and Defendant AHAS Parent (Exh. B.);

(f)    directly, intentionally, maliciously and tortiously interfering, obstructing and preventing Plaintiff from performing his duties as the designated "Sellers Representative"

14

under the under the third-party asset purchase agreement (Exhibit "C"); and

    (g)    directly, intentionally, maliciously and tortiously interfering, obstructing and preventing Plaintiff from performing his duties under the specific terms and conditions of a consulting agreement with the third-party purchaser that Plaintiff was required to execute and fulfil as the Sellers Representative under the third-party asset purchase agreement (Exhibits "D" and "E");

    (h)    transferring all of Plaintiff longstanding and still-existing work duties and rights as CEO to Defendant, Christine Schaffer (Exh. B); and

    (i)    notifying clients, vendors and legal representatives of Defendant AHAS Subsidiary and Defendant AHAS Parent that Plaintiff no longer represents those companies (Exh. E).

59.    However, it is undisputed that the Defendants, including the Defendant Shareholders, acknowledged, confirmed and approved Plaintiff's total $20.8 million pay-out from the third-party asset transaction, including the $11.8 million owed to him post-closing, before their execution of the asset purchase agreement and the Aizen Termination Agreement in June 2018, at the closing on the third-party transaction in September 2018, and after that closing through partial distribution of sale funds owed to Plaintiff.

60.    In addition, the $500,000 payment made to Plaintiff toward the $11.8 million owed to him post-closing was approved by Defendants, by and through Defendants, Christine Schaffer and Grover Lee prior to the funds being distributed to him (Exh. B).

61.    As part of the "Agreement to Terminate Employment Agreement," the Aizen Termination Agreement, Plaintiff's "employment" with Defendant AHAS Subsidiary and Defendant AHAS Parent were not terminated, but only his prior employment "*agreement*," since by the express terms of the Termination Agreement, as well as by the terms of his Consulting Agreement with the

15

third-party purchaser, Aizen's employment was expected to continue, and after the closing of the third-party transaction did continue until the filing of his initial Complaint in this case on October 23, 2018.

62.    As a result of the actions of the Defendants in violation of CEPA, Plaintiff has suffered, and continues to suffer, $11,300,000.00 in lost contractual payments, ownership and shareholders rights in Defendants, AHAS Parent and AHAS Subsidiary required under the Termination Agreement, lost health benefits and expense payments, emotional distress, humiliation and reputational damage, lost employment and consulting wages and benefits under the Termination Agreement and as an employee of AHAS Parent and AHAS Subsidiary, and other out-of-pocket expenses and losses.

WHEREFORE, with cause having been shown, Plaintiff demands judgment against Defendants, jointly and severally, for the following relief: (1) specific performance of the Termination Agreement; (2) injunctive relief preventing Defendant Shareholders from dissipating and converting assets of Defendants, AHAS Parent and AHAS Subsidiary; (3) compensatory damages in the amount of at least $11,300,000, and continuing; (4) compensatory damages for emotional distress and humiliation; (5) consequential damages; (6) punitive damages; (7) treble damages; (8) attorney's fees and costs; and (9) such other relief the court may deem equitable and just.

### COUNT VI
### (FRAUD)

63.    Plaintiff hereby incorporates by reference the preceding paragraphs 1-62.

64.    All of the Defendants, including the individual Defendant Shareholders, were parties to the asset purchase agreement with the third-party purchaser, and both knowingly and voluntarily executed the asset purchase agreement with the third-party purchaser. (Exh. C).

65.    In addition, at all times during the negotiations and closing on third-party asset transaction and purchase, all of the Defendants, including the individual Defendant Shareholders,

16

were represented by Steve Cohen, Esq., of the Princeton, New Jersey office of *Morgan Lewis and Bockius*. (Exh. C.)

66.    In Section 10.11, the asset purchase agreement, all of the Defendants, including each of the individual Defendant Shareholders, agreed that, *inter alia*:

> "Each party acknowledges that such party and its attorneys have been given an equal opportunity to negotiate the terms and conditions of this Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party or any similar rule operating against the drafter of an agreement shall not be applicable to the construction or interpretation of this Agreement. The parties intend that each representation, warranty, covenant and agreement contained herein shall have independent significance."

(Exh. C.)

67.    On June 26, 2018, the Boards of Directors of both Defendant, AHAS Subsidiary (American Healthcare Administrative Services. Inc.) and Defendant, AHAS Parent, which were made up of Plaintiff and the Defendant Shareholders in this action, and the Defendant Shareholders in this action, all approved various *Resolutions* signed by Defendant, Christine Schaffer as "Secretary," (Exhibits "F," "G" and "H"), in which all of the Defendants in this case approved the third-party asset transaction and purchase agreement "in all aspects" and all "transactional documents" relating thereto, including, but not limited to, the Aizen Termination Agreement (Exhibit "I"), because the Boards and Defendant Shareholders deemed it "advisable and in the best interests of" the company.

65.    In the June 26, 2018 Board and Shareholders *Resolutions* signed by Defendant, Christine Schaffer, Defendant, AHAS Subsidiary (American Healthcare Administrative Services. Inc.) agreed that, *inter alia*, the Aizen Termination Agreement" did not terminate Plaintiff's employment with Defendant, AHAS Subsidiary, but only his prior employment *agreement* with the company. (Exhs. F, G and H.)

66.    In the June 26, 2018 Board and Shareholder *Resolutions* signed by Defendant, Christine Schaffer, Defendant, AHAS Subsidiary (American Healthcare Administrative Services.

Inc.) agreed that, *inter alia*, the company would pay Plaintiff the $11.8 million dollars owed to him under the Aizen Termination Agreement, as part of the "Termination Transactions" also approved by the Board. (Exhs. F, G and H.)

67.    In the June 26, 2018 Board *Resolutions* signed by Defendant, Christine Schaffer, Defendant, AHAS Subsidiary (American Healthcare Administrative Services. Inc.) agreed that, *inter alia*, Plaintiff and the company would "grant each other a mutual release for all actions that have occurred prior to the Closing, as such term was defined in the Purchase Agreement (the "Release.")

68.    On September 17, 2018, the Boards of Directors of both Defendant, AHAS Subsidiary (American Healthcare Administrative Services. Inc.) and Defendant, AHAS Parent, which were made up of Plaintiff and the Defendant Shareholders in this action, and the Defendant Shareholders in this action, all approved various *Resolutions* agreeing to the distributions of the funds from the third-party asset transaction, including the $11.8 million owed to Plaintiff under that transaction and the Aizen Termination Agreement (Exhibits "J," "K" and "L").

69.    In agreeing to accept and approve the third-party asset transaction and purchase as a shareholder, director, officer and employee of Defendant Subsidiary and Defendant Parent, Plaintiff relied, *inter alia*, on Defendants' acknowledgments and representations in the third-party asset purchase agreement, the Board and Shareholder *Resolutions* and the Aizen Termination Agreement, as well as on other written and verbal acknowledgment, approval and confirmation of his total pay-out from the asset sale funds given to him by Defendants, Christine Schaffer and Grover Lee prior to execution of, and then closing on, the asset purchase agreement (Exhibit "M").

70.    Despite Defendants representations, Defendants, including the Defendant Shareholders have, since closing on the third-party asset transaction on September 17, 2018, Defendants have refused to pay Plaintiff the remaining $11.3 million dollars of his sale proceeds.

71.    It is now clear to Plaintiff, that the Defendant Shareholders, who are members of the

same family, intentionally and fraudulently induced Aizen to agree to the third-party asset transaction with the intent to deny him over 50% of his contractually-entitled pay-out funds from that sale as part of an illicit and fraudulent scheme to personally taking, convert and distributing those funds among themselves to their significant financial benefit and to Plaintiff's significant financial detriment.

72.     Defendants knew of the falsity of their fraudulent representations and inducements to Plaintiff at the time they were made, and continue to know of their falsity since the closing of the third-party asset transaction.

73.     As the direct and proximate result of his reliance on Defendants fraudulent representations, Plaintiff has incurred damages of $11.3 million dollars.

WHEREFORE, with cause having been shown, Plaintiff demands judgment against Defendants, jointly and severally, for the following relief: (1) specific performance of the Termination Agreement; (2) injunctive relief preventing Defendant Shareholders from dissipating and converting assets of Defendants, AHAS Parent and AHAS Subsidiary; (3) compensatory damages in the amount of at least $11,300,000, and continuing; (4) compensatory damages for emotional distress and humiliation; (5) consequential damages; (6) punitive damages; (7) treble damages; (8) attorney's fees and costs; and (9) such other relief the court may deem equitable and just.

### COUNT VII
(Breach of Fiduciary Duties-Defendant Shareholders)

74.     Plaintiff hereby incorporates by reference the preceding paragraphs 1-73.

75.     As officers, directors and majority shareholders of Defendants, AHAS Parent and AHAS Subsidiary, the Defendant Shareholders owed Plaintiff, as an employee and shareholder, a fiduciary duty of care.

76.     The Defendant Shareholders breached their duty of care to Plaintiff by, *inter alia*, retaliating against Plaintiff as set forth in *Count V* above, by fraudulently inducing, and then denying, him the full $20.8 million pay-out due him from the third-party transaction and by preventing him

from being able to perform his duties under existing contracts that benefit Plaintiff and the Defendants in this case, as set forth in *Count VI* above.

77.    As the direct and proximate result of the Defendant Shareholder's breach of their fiduciary duty to Plaintiff, Plaintiff has incurred damages of $11.3 million dollars to date.

WHEREFORE, with cause having been shown, Plaintiff demands judgment against Defendants, jointly and severally, for the following relief: (1) specific performance of the Termination Agreement; (2) injunctive relief preventing Defendant Shareholders from dissipating and converting assets of Defendants, AHAS Parent and AHAS Subsidiary; (3) compensatory damages in the amount of at least $11,300,000, and continuing; (4) compensatory damages for emotional distress and humiliation; (5) consequential damages; (6) punitive damages; (7) treble damages; (8) attorney's fees and costs; and (9) such other relief the court may deem equitable and just.

## COUNT VII
(Tortious Interference with Contract)

78.    Plaintiff hereby incorporates by reference the preceding paragraphs 1-77.

79.    As set forth above in *Count V*, Plaintiff is party to a Consulting Agreement with the third-party purchaser. (Exh D.)

80.    The Defendants, including the Defendant Shareholders are not parties to Plaintiff's Consulting Agreement. (Exh. D.)

81.    In addition, Plaintiff has certain contractually-obligated rights and duties as the Sellers Representative under the asset purchase agreement that the Defendants, including the Defendant Shareholders, do not have. (Exh. C.)

82.    Since closing on the third-party asset purchase agreement on September 18, 2018, and in retaliation for filing his initial Complaint in this case, the Defendants, including the Defendant Shareholders have directly, intentionally, maliciously and tortiously interfered, obstructed and prevented Plaintiff from being able to perform his rights and duties as Sellers Representative and

under the specific terms and conditions of his consulting agreement with the third-party purchaser that Plaintiff by, *inter alia*:

(a) stripping him of all his longstanding rights, duties and responsibilities as the Chief Executive Officer/President of both AHAS Parent and AHAS Subsidiary, including, but not limited to, unlawfully making a lesser officer of the company the chief executive of the company;

(b) removing his signatory authority on company bank accounts;

(c) denying him any right to communicate with any other company employees under threats of criminal and civil complaints against him;

(d) instructing company staff to cease all communications with Plaintiff, thereby completely isolating him within the company;

(e) transferring all of Plaintiff longstanding and still-existing work duties and rights as CEO to Defendant, Christine Schaffer;

(f) notifying clients, vendors and legal representatives of Defendant AHAS Subsidiary and Defendant AHAS Parent that Plaintiff no longer represents those companies (Exh. E); and

(g) denying him any access to documents, information and communications of Defendant AHAS Subsidiary and Defendant AHAS Parent.

83. Given, *inter alia*, their prior, undisputed approval of the third-party transaction and related agreements, including the Aizen Termination Agreement, the Defendants' interference in Plaintiff's contractual rights and duties is without any justification, and is being done as part of Defendants' retaliation against Plaintiff for initiating this action, and as part of their intentional, fraudulent, malicious and illicit scheme to convert the remaining $11.3 million owed to Plaintiff to their own financial benefit and to Plaintiff's significant financial detriment.

84.    As the direct and proximate result of the Defendants' interference in Plaintiff's contractual rights and obligations and under his Consulting Agreement, Plaintiff has lost money under that agreement.

WHEREFORE, with cause having been shown, Plaintiff demands judgment against Defendants, jointly and severally, for the following relief: (1) injunctive relief preventing Defendants, including the Defendant Shareholders interfering in his rights and obligations as the Sellers Representative and under his Consulting Agreement with the third-party purchaser, and preventing the dissipation and/or conversion of the assets of Defendants, AHAS Parent and AHAS Subsidiary by Defendants, including the Defendant Shareholders; (2) compensatory damages for all payments lost by Plaintiff under the Consulting Agreement; (3) compensatory damages for emotional distress and humiliation; (4) consequential damages; (5) punitive damages; (6) treble damages; (7) attorney's fees and costs; and (8) such other relief the court may deem equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues and allegations in this action.

Dated: July 5, 2019

/s/ Matthew A. Peluso, Esq.
Matthew A. Peluso, Esq. (MP4106)
A Limited Liability Company
103 Carnegie Center
Suite 300
Princeton, NJ 08540
(609)306-2595 (Tel.)
(609) 520-8731 (Fax)
E-Mail:

*Counsel for Plaintiff, Lance Aizen*