<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LANCE AIZEN | : |
| | : |
| Plaintiff, | : |
| | : Case No.: 3:18-cv-15195-BRM-DEA |
| v. | : |
| | : **OPINION** |
| AMERICAN HEALTHCARE | : |
| ADMINISTRATIVE SERVICES, INC., | : |
| *et al.*, | : |
| | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the parties' responses (ECF Nos. 14 & 15) to the Court's Order to Show Cause (ECF No. 11), as well as Plaintiff Lance Aizen's ("Aizen") Motion to Strike Defendants' Supplemental Brief and to File a Supplemental Reply (ECF No. 16). Having reviewed the parties' submissions (ECF Nos. 14, 15, 16-1, 17, & 18) filed in connection with this matter and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, this matter is **DISMISSED** for lack of subject matter jurisdiction.

**I.    BACKGROUND**

This matter arises from a business dispute between Aizen and various individuals and entities associated with American Healthcare Administrative Services, Inc. ("AHASI"), concerning the sale of significant AHASI assets to a third party and an agreement to adjust the nature of Aizen's employment relationship with AHASI. (Am. Compl. (ECF No. 9-2) ¶ 19.) Aizen is the only plaintiff. (Cert. of Lance Aizen (ECF No. 9-17) ¶¶ 19-28.) The parties disagree over the state in which Aizen may properly claim citizenship.

Defendants assert Aizen is a citizen of Pennsylvania. (Decl. of Christine V. Schaffer (ECF No. 7-1) ¶¶ 6-12). To demonstrate Aizen's alleged Pennsylvania citizenship, Defendants point out that Aizen owns a residence in Yardley, Pennsylvania, his employment agreement with AHASI lists that Pennsylvania residence as his address, and AHASI paid Aizen's wages in Pennsylvania and had made quarterly tax filings in Pennsylvania related to Aizen's wage payments. (ECF No. 7-1 ¶¶ 6-12.)

Aizen alleges he is a citizen of New Jersey. (ECF No. 9-2 ¶ 1.) To demonstrate his New Jersey citizenship, Aizen asserts he owns and has resided in his New Jersey home for the past four years, he has resided the majority of the year in New Jersey for each of the past four years, and he has developed numerous contacts and clients in New Jersey over several decades. (ECF No. 9-17 ¶ 59-61.) Aizen concedes he owns property in Pennsylvania but explains this property is no more than a mailing address. (ECF No. 9-17 ¶ 96.) Aizen also argues his executive assistant mails him documents at his New Jersey address, and his New Jersey address is listed as his contact address on the contract selling off a major portions of AHASI's assets. (ECF No. 9-17 ¶ 97.)

AHASI, a California corporation, is also a defendant. (ECF No. 9-2 ¶ 4.) The company is "in the business of providing unique, member-health focused pharmacy benefit management services to self-insured employers, health plans, hospitals, school districts," which include "national pharmacy benefit management services," "340B [sic] federal drug program administration" and "population health management services." (ECF Nos. 7-1 ¶ 4 & 9-17 ¶ 10.) Since 2012 and through at least the time Aizen filed his complaint, Aizen was AHASI's chief executive officer and chairman of its board of directors. (ECF No. 9-17 ¶¶ 6-7.)

AHASI is "a 'virtual' company" whose "employees, including its executives, work[] remotely," often from states outside California. (ECF No. 9-17 ¶¶ 52, 58.) As AHASI's chief executive officer, Aizen "report[s] solely and directly" to AHASI's board of directors—a board which includes Aizen. (Employment Agreement (ECF No. 7-2) ¶ 4-5.) Aizen is "responsible, and [possesses] all decision making authority in his business judgment, for all operations of [AHASI]," including "the sole

discretion and authority to hire and terminate all employees"—subject only to the board of director's approval of the overall budget and veto of the hiring or firing of certain high-level officers. (ECF No. 7-2 ¶ 4.) In other words, Aizen possesses "complete operating control" of AHASI, which he exercises from his home in New Jersey. (ECF No. 9-17 ¶¶ 89, 96.)

Aizen alleges that AHASI's principal place of business is its corporate headquarters is in California. (Cert. of Lance Aizen (ECF No. 14-1) ¶ 4; Cert. of Lance Aizen (ECF No. 16-6) ¶ 14.) However, the corporate headquarters consists merely of "a small[] office in a shared office space in which [AHASI] only stores documents. Notifications and mail are received at a UPS store front." (ECF No. 9-17 ¶ 92.) Aizen filed a certification in which he stated that "all current staff of [AHASI] are virtual employees who work from remote locations," and that "there are no [AHASI] employees who work from the company's shared office space at" its corporate headquarters in California. (ECF No. 9-17 ¶¶ 93, 95.) In a later certification, Aizen's contradicted his earlier certification, stating that AHASI

> maintained the following "core" staff at the company's only physical place of business and its only headquarters located in California: Senior Vice President of Client Services (the most senior client service manager); Senior Vice President of Finance (the Chief Financial Officer of the company and the most senior financial manager of the company); Vice President of Information Technology (the most senior technology representative of the company); Chief Clinical Officer; General Counsel; Director of Sales and Marketing Administration; Director of Human Resources (the most senior Human Resources Manager of the company); Director Member Services; all accounting staff for the company; and all Information Technology staff of the company.

(ECF No. 16-6 ¶ 22.)

A Delaware corporation, AHAS Holdings, Inc. ("AHAS Holdings") owns 100% of AHASI. (ECF No. 9-2 ¶ 3.) AHAS Holdings "has no business office separate and apart from" AHASI's headquarters in California. (ECF No. 7-1 ¶ 4.) AHAS Holdings' corporate filings list the company's address as the office its registered agent, The Corporation Trust Company ("CT"), in Wilmington,

Delaware.[1]  (ECF No. 14-1 ¶ 5; ECF No. 16-6 ¶ 16.)  Aizen owns 10% of AHAS Holdings and serves as the company's president and chief executive officer.  (ECF No. 7-1 ¶ 5; ECF No. 9-2 ¶ 1.)

Several other defendants, either directly or through trusts, own the remainder of AHAS Holdings: AHASI's chief clinical officer Christine Schaffer; Schaffer's former husband Grover Lee; Schaffer's son Charles Lee; and Schaffer's daughter Jacqueline Lee.  (ECF No. 7-1 ¶ 2-3.)  Schaffer and her son are citizens of Florida, while Schaffer's ex-husband and daughter hold California citizenship.  (ECF No. 9-2 ¶¶ 2, 6, 8, 12.)  The remaining defendants are various trusts established in California and administered by the four natural person defendants either in California or Florida.  (ECF No. 7-1 ¶ 3.)

After Aizen filed this action, all Defendants moved to dismiss the action for lack of personal jurisdiction, or in the alternative to transfer the action to another judicial district.   (ECF No. 7.)  Without deciding the question of personal jurisdiction, this Court issued an order to show cause why this case should not be dismissed for lack of subject matter jurisdiction and issued a briefing schedule requiring Aizen to file a supplemental initial brief and permitting Defendants to file a supplemental response.  (ECF No. 11.)  After the close of briefing, Aizen moved to (1) file a supplemental reply brief and (2) strike Defendants' supplemental response brief.  (ECF No. 16.)

---

1 CT is a well-known provider of services as a registered agent for service of process.  *See* Leslie Wayne, *How Delaware Thrives as a Corporate Tax Haven*, N.Y. Times, June 30, 2012, https://www.nytimes.com/2012/07/01/business/how-delaware-thrives-as-a-corporate-tax-haven.html.  AHAS Holdings' listed address—1209 Orange Street, Wilmington, Delaware—is the address CT uses in Delaware for its registered agent services.  *See, e.g.*, *Carrier Corp. v. Goodman*, 64 F. Supp. 3d 602, 608 (D. Del. 2014) ("[Defendant's] registered agent in Delaware is The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.").

## II.    MOTION TO FILE A SUPPLEMENTAL REPLY BRIEF AND MOTION TO STRIKE

Aizen's motion contains two parts.  First, the Court will permit Aizen's supplemental reply brief.  Second, the Court will not strike Defendants' supplemental response brief.

### A.    Motion to File a Supplemental Reply Brief

First, the Court authorizes Aizen's supplemental reply brief.[2]  Ordinarily, parties are limited to filing briefs in accordance with a court's briefing schedule and may not file supplemental briefs beyond those contemplated by the schedule.  *See, e.g.*, *English v. Fed. Nat'l Mortg. Ass'n*, 752 F. App'x 148, 150 (3d Cir. 2019).  However, "the Court has broad discretion to consider supplemental briefing" in those rare occasions when permitting the briefing would be "appropriate and fair."  *Fenza's Auto, Inc. v. Montagnaro's, Inc.*, Civ. No. 10-3336, 2011 WL 1098993, at *4 (D.N.J. Mar. 21, 2011).

This case presents one such rare occasion.  Consideration of Aizen's supplemental reply brief is both appropriate and fair because Defendants raised a new argument, not addressed in Aizen's supplemental initial brief, concerning the location of an incorporated defendant's principal place of business.

Defendants urge this Court to reject Aizen's supplemental reply brief because Aizen could have made the same arguments in his supplemental initial brief.  This Court will not deny Aizen an opportunity to address Defendants' argument merely because Aizen failed to anticipate it.  *See Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001).  Accordingly, the Court authorizes Aizen's supplemental reply brief.

### B.    Motion to Strike Defendants' Supplemental Response

Second, the Court declines to strike Defendants' supplemental response brief.  Aizen raises three arguments in support of his motion, none of which Court finds persuasive.

---

2 The parties disagree about whether to characterize Aizen's brief as a "reply" or a "sur-reply."  No matter the characterization, the critical point is that Aizen may not file the brief without leave of the Court.  For the reasons explained below, the Court grants the required leave.

First, Aizen argues the Court should strike Defendants' brief because it does not include any attached affidavits or documentation and relies solely on evidence Aizen placed in the record. The Court rejects this argument: while parties *may* attach documents to a motion or opposition, neither the Federal Rules of Civil Procedure nor the Local Civil Rules of this district *requires* parties do so. *See* Fed. R. Civ. P. 7(b); L.Civ.R. 7.2(a). The absence of supporting affidavits or documentation may make a brief less persuasive, or even fatal to a party's argument, but it is no reason to strike the brief entirely.

Aizen also argues Defendants' supplemental response brief was "non-responsive." The Court disagrees. The Order to Show Cause called for briefing on diversity jurisdiction, and explicitly asked the parties to address the location of the corporate defendants' principal places of business. (ECF No. 11, at 2.) Defendants' brief argued that, based on Aizen's certification that he exercises nearly total control over AHASI from his home in New Jersey, AHASI's "nerve center"—and therefore its principal place of business—is Aizen's home in New Jersey. (ECF No. 15 at 4-5.) In other words, Defendants' brief was appropriately responsive to this Court's order. Aizen's contrary argument "amount[s], at best, to [a] mere disagreement[] between the parties regarding such matters as the . . . the underlying facts, . . . and the procedural rules and case law." *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 134 n.3 (3d Cir. 2008). This is insufficient to warrant striking an opponent's brief. *See id.*

Finally, Aizen suggests his initial certification filed in response to a motion to dismiss for lack of personal jurisdiction have no bearing on the present inquiry into the Court's subject matter jurisdiction. The Third Circuit has rejected this argument. *See Int'l Ass'n of Machinists v. Nw. Airlines, Inc.*, 673 F.2d 700, 709-10 (3d Cir. 1982) ("We attach no significance to the fact that the affidavits submitted by IAM were submitted for purposes other than in response to Northwest's motion to dismiss [for lack of subject matter jurisdiction]. Rather in this discussion [concerning subject matter jurisdiction] we will consider all the sworn materials.").

However, even if the Court were to strike Defendants' brief, the Court would nonetheless reach the same decision because this Court's independent review of the record reveals the absence of complete diversity. *Cf. Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 98 (3d Cir. 2017) (refusing to strike a brief because "it is clear that the District Court's orders should be affirmed irrespective of whether the Appellees' brief is considered").

## III.    SUBJECT MATTER JURISDICTION

Aizen alleges this Court has diversity jurisdiction over this action.  The Court disagrees: the record reveals Aizen (a plaintiff) and both AHASI and AHAS Holdings (defendants) are all citizens of New Jersey.  This fact destroys complete diversity, depriving this Court of subject matter jurisdiction.

"[A] district court has an independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).  In ruling on subject matter jurisdiction, "a court may consider evidence beyond the pleadings such as testimony and depositions when considering a jurisdictional challenge" and is "entitled to independently evaluate the evidence to resolve disputes over jurisdictional facts." *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).  In cases resting on diversity jurisdiction where any of the parties is a corporation, the party invoking jurisdiction fails to meet its burden if neither the complaint nor other evidence in the record demonstrate both the corporate party's (or parties') state(s) of incorporation and principal place of business. *See S. Freedman & Co. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006).

Aizen asserts this Court has diversity jurisdiction over this case because Aizen is a citizen of New Jersey, and all defendants are citizens of states other than New Jersey. (ECF No. 9-2 ¶ 16.) Diversity jurisdiction "requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). The Court considers whether diversity jurisdiction existed at the time the complaint is filed; subsequent changes in circumstances have no effect on diversity jurisdiction. *See Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570-71 (2004).

## A.    Aizen's Citizenship

Aizen is a citizen of New Jersey because he has domiciled himself in New Jersey. For a natural person, "citizenship for purposes of subject matter jurisdiction is synonymous with domicile." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400-01 (3d Cir. 2008). "[T]he domicile of an individual is [that individual's] true, fixed and permanent home and place of habitation. It is the place to which, whenever [the individual] is absent, [the individual] has the intention of returning." *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014) (quoting *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006)). One's domicile is "generally, the center of one's business, domestic, social and civic life." *Frett-Smith*, 511 F.3d at 401. Courts look at several factors to determine domicile: the location of the home, the place of employment or business, the location of assets, tax payments, vehicle registration and driver's license, voter registration, the location of a spouse or other family, and any organizational membership. *Id.*; *McCann*, 458 F.3d at 286. Courts must also consider statements by an individual claiming a particular state as his or her domicile. *See Washington v. Hovensa LLC*, 652 F.3d 340, 346-47 (3d Cir. 2011).

The record establishes that New Jersey is the state of Aizen's domicile, making him a citizen of New Jersey. While Aizen owns homes in both New Jersey and Pennsylvania, receives mail at both residences, and has used both addresses on business contracts, a critical factor is that Aizen resided a majority of the year in New Jersey for each of the last four years. Of note but not dispositive, Aizen

has developed a significant professional network in New Jersey. Most importantly, Aizen himself asserts that New Jersey is the state of his domicile. These facts demonstrate that New Jersey, not Pennsylvania, is "the center of [Aizen's] business, domestic, social and civic life." *Frett-Smith*, 511 F.3d at 401.

Defendants counter that AHASI paid Aizen's wages in Pennsylvania and had made quarterly tax filings in Pennsylvania related to Aizen's wage payments. These facts are due less weight because domicile focuses on the domiciliary's intent. *Freidrich*, 767 F.3d at 377. AHASI's payment of wages and tax filings demonstrate that AHASI's human resources department thought Aizen domiciled himself in Pennsylvania, but not that Aizen considered himself domiciled in Pennsylvania. While AHAHSI's wage payments and tax filings are probative as objective indicators of Aizen's intent, they do not outweigh the other objective evidence of Aizen's intent to domicile himself in New Jersey—in particular, Aizen's assertion that New Jersey is his domicile. Accordingly, New Jersey is Aizen's state of domicile, making Aizen a citizen of New Jersey for the purpose of diversity jurisdiction.

### B.     AHASI's and AHAS Holdings' Citizenship

AHASI and AHAS Holdings are also citizens of New Jersey[3] because their principal place of business is Aizen's home in New Jersey. "For jurisdictional purposes, 'a corporation is a citizen of both its state of incorporation and the state where it has its principal place of business." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013)). The principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," often called the "nerve center." *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 219 (3d Cir. 2010) (quoting *Hertz*, 559 U.S. at 92-93).

---

3 In addition to being citizens of New Jersey, AHASI and AHAS Holdings are also citizens of the states in which they were incorporated. *See* 28 U.S.C. § 1332(c)(1). AHASI, incorporated in California, is therefore a citizen both of New Jersey and California. AHAS Holdings, incorporated in Delaware, is therefore a citizen of both of New Jersey and Delaware. Only the corporations' New Jersey citizenship is relevant to this case.

While "in practice [the principal place of business] should normally be the place where the corporation maintains its headquarters," that general rule must yield if "the headquarters is [not] the actual center of direction, control, and coordination," but is "simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Hertz*, 559 U.S. at 93; *see also Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013). The nerve center must be "more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz*, 559 U.S. at 97; *see also Johnson*, 724 F.3d at 347.

Even if a corporation "divide[s] [its] command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet," the principal place of business "test nonetheless points courts in a single direction, toward the center of overall direction, control, and coordination." *Hertz*, 559 U.S. at 95-96. One key consideration is where the president or chief executive officer reports to work. *See DeLuca v. Allstate N.J. Ins. Co.*, Civ. No. 11-4129, 2011 WL 3794229, at *4 (D.N.J. Aug. 25, 2011).

Aizen argues that AHASI's principal places of business is its corporate headquarters in California, and that AHAS Holdings' principal place of business is its corporate headquarters in Delaware. The Court disagrees: both AHASI's and AHAS Holdings' principal places of business— their "nerve centers"—are Aizen's New Jersey home from which Aizen directed, controlled, and coordinated both companies' corporate activities.

AHASI is a virtual company, so its employees and executives are spread out across the country rather than centralized in a particular location. Aizen filed two contradictory certifications concerning the level of corporate activity that occurs at AHASI's California headquarters. If the Court accepts Aizen's first certification, then ASAHI's corporate headquarters is little more than a mail drop and storage facility for official corporate paperwork—no employees or executives work from the headquarters, which sees little (if any) corporate activity. If the Court accepts Aizen's second

certification, then several mid-level executives and other support employees conduct corporate activity from this location.

However, the Court need not determine which of Aizen's contradictory certifications to credit, because the "nerve center" analysis remains the same. As the chairman and chief executive officer of AHASI, Aizen exercises nearly complete authority over AHASI, "direct[ing], control[ling], and coordinati[ng]" substantially all its activities, subject only to limited internal checks by AHASI's board of directors (of which Aizen is a member). *Hertz*, 559 U.S. at 95-96. The record demonstrates Aizen's total, absolute authority over AHASI: according to Aizen's certification, Aizen possesses "complete operating control" of AHASI, and is "responsible, and [possesses] all decision making authority in his business judgment, for all operations of [AHASI]," including "the sole discretion and authority to hire and terminate all employees"—subject only to the board of directors' approval of the overall budget and veto of the hiring or firing of certain high-level officers. (ECF No. 7-2 ¶ 4.; ECF No. 9-17 ¶¶ 89.) Given Aizen's dominance of AHASI's operations, the company's "nerve center" is the location in which Aizen primarily works—which, the record reveals, is Aizen's New Jersey home. This is true whether or not AHASI conducted other corporate functions at its California headquarters, because these functions do not move "the center of overall direction, control, and coordination" away from Aizen. *Hertz*, 559 U.S. at 96.

Aizen is also president and chief executive officer of AHAS Holdings, AHASI's parent company. The record reveals less about AHAS Holdings than about AHASI. AHAS Holdings' official corporate headquarters is listed as the address of its registered agent. This address cannot be AHAS Holdings' principal place of business because nothing in the record shows that corporate officers or directors ever set foot in the registered agent's office, much less that they make important corporate decisions at this location. AHAS Holdings shares AHASI's California headquarters, although as previously noted, this corporate headquarters is not "the center of overall direction, control, and coordination" of any corporation, and may be little more than a repository for corporate documents.

Given Aizen's high corporate standing within AHAS Holdings, Aizen's "complete operating control" over both AHAS Holdings and its subsidiary AHASI, and the tight connection between the two companies, AHAS Holdings' "nerve center" is the same as AHASI's principal place of business. Accordingly, AHAS Holdings' principal place of business, like AHASI's principal place of business, is Aizen's New Jersey home.

Aizen disagrees with this analysis, and makes multiple arguments to the effect that AHASI's principal place of business is in California and that AHAS Holdings' principal place of business is in Delaware—and that neither maintains its principal place of business in New Jersey. The Court disagrees with each argument.

First, Aizen points to the record—including Aizen's certifications, corporate filings, and tax documents—in which AHASI uses a California address and AHAS Holdings uses a Delaware address. These arguments are not persuasive because they do not address the test for a corporation's principal place of business, namely, where corporate officers make critical corporate decisions. *See Hertz*, 559 U.S. at 95-96. A company may use one address for tax purposes, a second address for corporate filings, and the corporation's CEO may subjectively believe that a third address is the corporation's "principal place of business," but if none of these locations is "where [the] corporation's officers direct, control, and coordinate the corporation's activities," then none of the locations constitutes the corporation's principal place of business. *Id.* at 92-93.

Second, Aizen argues that no evidence shows that either company has ever claimed a principal place of business in New Jersey. This argument is likewise not persuasive: the "nerve center" test does not depend on what address a company lists when filing government forms or what address the company provides to members of the public; the test considers only "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92-93. Whether or not the corporation claims that location as its principal place of business does not control the analysis.

Third, Aizen argues that, even if the Court disagrees that AHASI's principal place of business is its California headquarters and AHAS Holdings' principal place of business is its Delaware headquarters, there is no evidence demonstrating that either company maintains any location in New Jersey that could qualify as a "nerve center" under *Hertz*. The Court disagrees for two reasons. First, as the party invoking this Court's jurisdiction, Aizen bears the burden of proving the facts necessary to demonstrate complete diversity. *See, e.g.*, *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). Because Aizen bears the burden, Aizen must prove that AHASI and AHAS Holdings each have a principal place of business outside New Jersey; Aizen cannot meet this burden by simply claiming the absence of record evidence. Second, the Court disagrees with Aizen as a substantive matter: the record makes amply clear that Aizen exercises nearly complete authority over AHASI and AHAS Holdings; he alone "direct[s], control[s], and coordinate[s] the corporation's activities" from his New Jersey home; other corporate functionaries merely implement his vision. *Hertz*, 559. U.S. at 92.

Because AHASI's and AHAS Holdings' principal places of business are both in New Jersey, both companies are citizens of New Jersey for purposes of diversity jurisdiction.

### C.     Complete Diversity

Having determined the citizenship of plaintiff Aizen and defendants AHASI and AHAS Holdings, the Court observes that this case lacks complete diversity: both plaintiff Aizen and defendants AHASI and AHAS Holdings are citizens of New Jersey. Accordingly, the Court lacks diversity jurisdiction. *See Grand Union Supermarkets*, 316 F.3d at 410.

## IV.     CONCLUSION

For the reasons set forth above, this matter is **DISMISSED** for lack of subject matter jurisdiction. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  September 26, 2019